UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEVON G. MANNS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) CAUSE NO. 3:06-CV-54 RM |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant | ) |

OPINION AND ORDER

Devon Manns seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court affirms the Commissioner's decision.

BACKGROUND

Mr. Manns applied for benefits in June 1999, alleging disability as of December 3, 1996 due to fibromyalgia, chronic fatigue syndrome, and hypertension. His application was denied initially, on reconsideration, and after

---

[1] Michael J. Astrue, the current Commissioner of Social Security, has been automatically substituted as the named defendant, pursuant to FED. R CIV. P. 25(d)(1).

an administrative hearing in 2000. Mr. Manns sought judicial review, and the Commissioner's decision was vacated and the case remanded.[2]

On remand, Mr. Manns reasserted his allegations of disabling fibromyalgia and chronic fatigue syndrome, but also alleged disability due to a panic disorder and depression. A second administrative hearing was conducted in January 2004, at which Mr. Manns was again represented. After reviewing the record and hearing additional testimony from Mr. Manns and vocational expert Christopher Young, the ALJ again concluded that Mr. Manns was not disabled. Using the standard five-step sequential evaluation outlined in 20 C.F.R. 404.1520(a)(4)(i)-(iv), the ALJ found that: (1) Mr. Manns had not engaged in substantial gainful activity since the alleged onset of disability; (2) Mr. Manns had a severe physical impairment, fibromyalgia. but no other severe impairments; (3) Mr. Manns' impairment didn't meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) Mr. Manns had the residual functional capacity to perform a less than full range of light work, and could not perform his past relevant work; and (5) there were a significant number of jobs in the national economy that Mr. Manns could still perform, given his age, education, work experience and residual functional capacity, including cashier, courier, and assembler. The ALJ thus

---

[2] The court found that the ALJ hadn't identified which listings he considered or sufficiently articulated his reasons for ruling out pertinent listings, rejecting opinions offered by Mr. Manns' treating physician, and rejecting Mr. Manns' subjective complaints. See Opinion and Order dated April 4, 2003 [Doc. No. 17] in Manns v. Barnhart, Cause No. 3:02-CV-365 (N.D. Ind.).

concluded that Mr. Manns wasn't disabled within the meaning of the Social Security Act and wasn't entitled to benefits.

When the Appeals Council denied Mr. Manns' request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Fast v. Barnhart, 397 F.468, 470 (7th Cir. 2005). This appeal followed.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court must affirm the Commissioner's determination if it is supported by substantial evidence, see Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000), which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The substantial evidence analysis prevents the court from "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility"—in short, substituting its own judgment for that of the Commissioner, Williams v. Apfel, 179 F.3d 1066, 1071-1072 (7th Cir. 1999); accord Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000)—but the court will not simply "rubber-stamp the Commissioner's decision without a critical review of the evidence." Clifford v. Apfel, 227 F.3d at 869.

### DISCUSSION

Mr. Manns challenges the ALJ's findings at steps four and five of the disability evaluation. He contends the ALJ's findings with respect to his credibility and his treating physician's opinions were not supported by substantial evidence

3

or adequately explained, and that the ALJ didn't consider all of his impairments in assessing residual functional capacity and the type of work he was capable of doing.

### A. *Treating Physician's Opinion*

Mr. Manns contends that the ALJ committed reversible error by rejecting treating physician Dana Coates' medical opinions and diagnosis of chronic fatigue syndrome based solely on his assessment of Mr. Manns' credibility, and not considering the length of Dr. Coates' treating and examining relationship or the consistency of Mr. Mann's ongoing complaints.

The ALJ found that there was no valid diagnosis of chronic fatigue syndrome. He gave little or no weight to the opinions offered by Mr. Manns' treating physician, Dr. Dana Coates, regarding the symptoms and limitations allegedly resulting from chronic fatigue syndrome because his opinions weren't supported by medically acceptable findings and appeared to be based solely on Mr. Manns' subjective complaints and the mistaken belief that physicians at the Indiana University Medical Center (IUMC) in 1992 had diagnosed Mr. Manns with chronic fatigue syndrome. The ALJ specifically found that:

> The diagnosis of chronic fatigue syndrome as a severe impairment is not sustained by medically acceptable findings even though Dr. Coates was satisfied of the diagnosis based upon the claimant's complaints. Dr. Coates noted none of the five or six objective tests discussed in the Social Security Ruling 99-2p in his treatment records and reports. Chronic fatigue syndrome is a diagnosis of exclusion, but there may be objective signs associated with it. Dr. Coates does note that no other explanations serve to explain the

4

>fatigue. This seems to say (see Exhibit 15F, page 3) that significant depression (a disorder that can explain fatigue) is not present.
>
>The claimant's personal account seems to be the focal point of all evidence. His complaints and not objective tests are the basis of Dr. Coates' opinion…The claimant told Dr. Coates that he had been tested at the Indiana University Medical Center (IUMC) in 1992 and their findings supported a diagnosis of chronic fatigue syndrome. Dr. Coates apparently relied upon this statement in April 2000, to found his opinion (Exhibit 15F page 3). This is not true, however, and [Mr. Manns] did not produce evidence of this medical finding when his physician asked him to do this (Exhibits 15F, 16F, page 3).

(A.R. 366).

A treating physician's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); <u>Clifford v. Apfel</u>, 227 F.3d at 870. But as the ALJ correctly noted, no objective medical findings or test results supported Dr. Coates' opinions about Mr. Manns' symptoms and functional limitations.

Mr. Manns acknowledged at the second hearing that IUMC physicians never tested him for chronic fatigue syndrome. When the IUMC records were finally made a part of the record, they showed that Mr. Manns had been referred for a liver biopsy to rule out hepatitis; that he hadn't been diagnosed with chronic fatigue syndrome; and that Epstein-Barr testing was negative. Subsequent testing for Epstein-Barr was also negative. The ALJ found that the IUMC records "undermine[d] the opinion of Dr. Coates who then relied on the claimant's

5

allegations that IUMC physicians tested him and determined that he had chronic fatigue syndrome." (A.R. 366).

That Dr. Coates ran no tests of his own to substantiate the diagnosis and simply relied on Mr. Manns' subjective complaints is shown by Dr. Coates' April 29, 2000 response to a Chronic Fatigue Syndrome Questionnaire. (A.R. 352-354). The first question asked Dr. Coates to indicate which of six laboratory findings listed supported a diagnosis of chronic fatigue syndrome and to attach lab results.[3] Dr. Coates checked none of the findings and provided no lab results. Question (3) asked: "Are the patient's signs, symptoms, and history consistent with a diagnosis of chronic fatigue syndrome even if positive laboratory findings are absent?" Dr. Coates checked "yes", and noted that the diagnosis had been "made at Indiana University," that the patient "never obtained records for me," that Mr. Manns stated he had many of the signs and symptoms of CFS beginning in 1993, and that he first evaluated him in December 1996. (A.R. 352).

At the second hearing, Mr. Manns denied telling Dr. Coates that IUMC had diagnosed chronic fatigue syndrome, but he doesn't dispute the fact that Dr. Coates was under the mistaken belief that he had been tested for and diagnosed

---

[3] The list included: Elevated antibody titer to Epstein-Barr virus (EBV) capsid antigen equal to or grater than 1:15120, or early antigen equal to or greater than 1:640; Abnormal magnetic resonance imaging (MRI) brain scan; Neurally mediated hypotension as shown by tilt table or other testing; Abnormal exercise stress test; Abnormal sleep studies; and Other (describe).

with CFS by physicians at IUMC.[4] Mr. Manns doesn't identify any objective medical evidence supporting a diagnosis of chronic fatigue syndrome or Dr. Coates' opinions about related symptoms and limitations, doesn't cite any authority for the proposition that a treating physician's opinion is entitled to controlling weight simply because she had a treating and examining relationship with the claimant, and incorrectly states that the ALJ's assessment of Dr. Coates' opinions was based entirely on his assessment of Mr. Manns' credibility. It was not. The ALJ's assessment of Dr. Coates' diagnosis of chronic fatigue syndrome and opinions regarding related symptoms and limitations was supported by substantial evidence in the record and was well-reasoned.

## B. *Credibility*

The ALJ found that Mr. Manns' statements regarding his symptoms and limitations weren't supported by objective medical evidence and weren't reliable, as evidenced by material inconsistencies in statements he made to physicians and at the administrative hearings, his unwillingness to comply with the pain management treatment program that had been recommended, and his well-groomed appearance at the hearing. The ALJ also noted that "[Mr. Manns] receives

---

[4] Dr. Coates wasn't the only physician to diagnose chronic fatigue syndrome based on the mistaken belief that Mr. Manns previously had been tested and diagnosed with chronic fatigue syndrome. In a psychological evaluation completed by Dr. Donald Kramer in July 8, 1999, Dr. Kramer diagnosed chronic fatigue syndrome and fibromyalgia "per history" (A.R. 254). Patient history notes from the Rehabilitation Hospital of Fort Wayne also indicated that Mr. Manns had been diagnosed with chronic fatigue syndrome by the IUMC 5 years earlier (in 1992). (A.R. 248).

regular disability income from his previous employer that would end if he were to return to work, which makes it possible for him to be unemployed." (A.R. 367).

Mr. Manns contends that the ALJ's stated reasons for finding his testimony unreliable were inaccurate and inadequate, and that the ALJ didn't consider all of his impairments in determining residual functional capacity. The court again must disagree.

The ALJ's assessment of credibility is entitled to great deference. *See* Herron v. Shalala, 19 F.3d 329, 335 (7th Cir. 1994); Ehrhart v. Secretary of Health and Human Servs., 969 F.2d 534, 541 (7th Cir. 1992); Imani v. Heckler, 797 F.2d 508, 512 (7th Cir. 1986)). The court has greater freedom to reassess credibility determinations when they rest upon "objective factors and fundamental implausibilities," rather than subjective determinations, Herron v. Shalala, 19 F.3d at 335, but otherwise will not upset credibility determinations unless "patently wrong." Luna v. Shalala, 22 F.3d 687, 690 (7th Cir. 1994).

Mr. Manns contends that the ALJ ignored evidence of concentration deficits—specifically clinical psychologist Dr. Donald Kramer's July 1999 evaluation, which indicated that Mr. Manns seemed to have "some problems" with his concentration and attention span. But Dr. Kramer concluded that Mr. Manns had no medically determinable psychological impairment and that his ability to function independently and sustain complex activities was normal. (A.R. 255-256). The ALJ accurately reported Dr. Kramer's findings and reasonably concluded from Dr. Kramer's report, the other medical evidence of record, and Mr. Manns'

8

repeated denials of any psychological problems, that Mr. Manns had no limitations in the basic mental abilities required to work.

Mr. Manns also claims that the ALJ "missed the mark" when he found that his noncompliance with recommended treatment for pain management demonstrated that his symptoms were not as severe as alleged. His attorney suggests various explanations for why Mr. Manns might have missed his physical therapy appointments (*i.e.*, distance from home and cost), but those aren't the reasons he gave at the time. Mr. Manns told Dr. Coates he stopped physical therapy because he felt he was "not getting anywhere." (A.R. 294). Records from the Rehabilitation Hospital of Fort Wayne, however, show that Mr. Manns reported relief after he underwent physical therapy on November 20, December 2, and December 4, 1997, that his sleep improved, and that he had no complaints of pain on December 9, 1997. Dr. Frances Goff, the clinical neuropsychologist who evaluated Mr. Manns in October 1997, reported that:

> The patient appeared to desire to talk extensively about his problems and to seek simplistic solutions...appeared to be somewhat resistant to making a commitment to consistent attendance, stating there are days when he is unable to drive, and would not be able to attend therapies on those days.
>
> The patient reports sleep disturbance but also indicates he is sleeping intermittently during the day. It is recommended that he refrain from sleep during the day in order to regulate nighttime sleep.
>
> Whereas the patient reports he is not seeking disability, he may, at some level, be experiencing secondary gain and may be exaggerating pain...

9

(A.R. 213). Dr. Goff discharged Mr. Manns two months later after he failed to follow up on recommended treatment, and noted that Mr. Manns did not show full commitment to pain management, provided inconsistent reports as to his symptoms, and wasn't fully motivated to participate. (A.R. 211). Mr. Manns disagrees with Dr. Goff's evaluation and contends he was "misdiagnosed," but his personal beliefs don't diminish the probative value of Dr. Goff's findings and conclusions.

Mr. Manns takes issue with the ALJ's finding that Mr. Manns afforded incorrect information to his medical providers by reporting he was diagnosed with chronic fatigue syndrome at IUMC. He contends that he never told Dr. Coates that, but Dr. Coates' records from December 13, 1996 indicate that Mr. Manns reported having undergone extensive testing, including a liver biopsy, two or three years earlier at IUMC, with the end result being a diagnosis of CFS. (A.R. 324). In his April 29, 2000 response to the Chronic Fatigue Syndrome Questionnaire, Dr. Coates stated that Mr. Manns' diagnosis of chronic fatigue syndrome had been made at IUMC and Mr. Manns had never obtained the records for him. (A.R. 352). Dr. Coates' notes from February 17, 2003, recording Mr. Manns' past history, indicated: "Extensive testing including liver biopsy at IU Med Center approx 1993; was told he had chronic fatigue syndrome." (A.R. 484). Mr. Manns also reported the same medical history to Dr. Kramer in 1999 (A.R. 254) and to the Rehabilitation Hospital of Fort Wayne in 1997 (A.R. 248).

CONCLUSION

Substantial evidence in the record as a whole supports the Commissioner's decision. Accordingly, the court AFFIRMS that decision.

SO ORDERED.

ENTERED:   March 31, 2008

/s/ Robert L. Miller, Jr.
Chief Judge, United States District Court
Northern District of Indiana